Curia, per

Frost, J.
The relators have filed this suggestion to prohibit the collection from them of the capitation tax, imposed on “ free negroes, mulattoes and musti-zoes,” claiming that they are white persons.
The claim involves all the civil and political rights of citizenship. For the law recognizes only three classes of persons ; freemen under the constitution, or citizens; slaves ; and free negroes, mulattoes and mustizoes, who constitute the third class. A firm and wise policy has excluded this class from the rights of citizenship in this and almost every State in which they are found. The constant tendency of this class to assimilate to the white, and the desire of elevation, present frequent cases of embarrassment and difficulty. The disqualification arises from descent from one of the African race; and the various degrees in which the physical peculiarities are transmitted in descent, makes those peculiarities a very uncertain criterion of caste. It may happen that persons, in equal degree from the African stock, may present such different complexions and features that they would readily be assigned to different castes. Habit and education have so strongly associated with the European race the enjoyment of all the rights and immunities of freedom, that color alone is felt and recognized as a claim. On the contrary, a strong repugnance prevails against a participation in the rights of citizenship by any who bear in their persons the traces of their servile origin. This aversion is, however, mitigated by the deference which honesty, sobriety and industry, and the qualities that unite in a respectable character, enforce on the mind. It would be difficult, if not impolitic, to define by precise and inflexible rules the line of separation between the two classes. Whatever rules may be adopted, the question of the reception of colored persons into the class of citizens, must partake more of a political than a legal character, and, in a great degree, be decided by public opinion, expressed in the *140 verdict of a jury. So far as the subject is controlled by rules of evidence, it will be found that they give effect to public sentiment rather than assume to direct and control it. If the color and other characteristics of African descent be distinctly marked and obvious, the condition of the person is determined by inspection only. State vs. Scott, 1 Bail. 270. Where color and features are doubtful, there is no rule on the subject; only it is to be considered settled, that it is not every admixture “of negro blood, however slight or remote,” which will make a person of color, within the meaning of the law; nor on the contrary, “is the condition to be determined solely by the distinct and visible mixture of negro blood; but by reputation, by reception in society, and by the exercise of the privileges of a white man.” State vs. Davis, 2 Bail. 558; State vs. Cantey, 2 Hill, 616. The question is one properly for the jury, and the court will rarely feel authorized to interfere with their verdict.
In this case, the father of the relators is confessedly a mulatto. Martha White is obviously a colored person. William had the appearance of a sand-hill boy ; and John did not appear in court. It was attempted to be proved that Josiah Bass, the father of Elijah Bass, was a white man. One affidavit states that he served in the revolutionary war. The color of Elijah Bass affords proof of his negro descent, which the jury might well require more evidence than one affidavit to contradict. Molly Bass, the grand-mother of the relators, was a well known mulatto woman. The record of the suit for ravishment of ward, itself, affords presumption of her caste: being a remedy appropriated to the trial of a disputed claim of freedom. The statement in the declaration that her mother was a white woman, was material to her claim of freedom, and established it, if true. But the suit was instituted by the friends of Molly Bass, without any adversary claimant, and the allegations and proofs in the case must be received with the cautious allowance given to ex parte statements. It is stated in the affidavit, which is incorporated in the grounds of appeal, that the relators were received and educated at school with white children. But this affidavit is no part *141 of the proof in the case. It is not pretended that Elijah Bass ever exercised, or claimed to exercise, the rights of citizenship in any particular.
The attempt to incorporate the relators among the constitutional freemen of the State, rests on the respectability of the family; the marriage of two of them with white persons ; their social equality in the neighbourhood ; and the omission of the tax collector to enforce from them, for many years, the capitation tax.
Respectability would give as good a claim to a large number of mulattoes. Marriage with a white person has never been held to elevate a colored person into the class of citizens; nor has mere social intercourse.
That they have not paid capitation tax for many years, gives no prescriptive right to civil and political franchises. The jury have considered the effect of all the circumstances which have been urged on this court to set aside the verdict. No sufficient reasons have been shewn to disturb their decision. It may be observed that the child of Mary White is not concluded by this record. There is then no inconsistency between the verdict in this case, and that which found the grandchildren of Elijah Bass (children of one of his sons by a white woman) to be white persons. Motion refused.
Evans and Wardlaw, JJ. concurred.
Richardson and O’Neall, JJ. We dissent, and think that a new trial should have been granted.
Butler, J. absent.